PER CURIAM.
By this interlocutory appeal the plaintiff seeks reversal of a partial final decree.[1] The complaint sought a declaration as to the validity of a concession contract between Florida Sportservice, Inc. and the Miami Baseball Company, a corporation which was dissolved after plaintiff Storer became the sole owner and transferred its assets to his name.[2] By agreement of the parties, approved by the court, trial was deferred on the issues raised by a counterclaim. After trial of the issues raised by the complaint and answer, the chancellor entered the decree now appealed, which adjudged the contract valid and ordered further proceedings on the counterclaim. We affirm.
In our analysis of the pleading's in the case of Storer v. Florida Sportservice, Fla.App.1959, 115 So.2d 433, 438, we pointed out:
" * * * Here Storer was operating a business which, according to his *907 allegations, he understood was subject to a concession contract made in 1949, to run until September 30, 1959. He then learns of another concession contract given out by the corporation whose stock he has since bought and the terms of which he finds onerous. He alleges facts concerning the execution of the latter contract on which he relies to establish its invalidity, * *
The essential fact referred to was plaintiff’s allegation:
“ * * * that the 1956 concession agreement was made by an officer of the corporation, Miami Baseball Company, without authority, and there was no basis upon which the chancellor could hold that the 1956 agreement was valid and binding on Storer and Florida Sportservice, Inc.”
The chancellor’s conclusion upon this question was as follows :
“The court determines, declares and decrees that that certain agreement dated February 28, 1956, executed by Miami Baseball Company, a Florida corporation, and the defendant, Florida Sportservice, Inc., a Florida corporation, (mentioned and referred to in the plaintiff’s amended petition and introduced in evidence as the plaintiff’s exhibit 3) has been since it was entered into, and is now, a valid and enforceable contract; and that the parties by which such agreement was executed and the plaintiff, George B. Storer, are, and each of them is, contractually bound and obligated by each and all of the terms and provisions of such agreement.”
Therefore, this appeal presents the question : Was there substantial evidence to support the conclusion of law reached by the chancellor?
Without attempting a complete statement of the evidence and the conclusions which could have been made therefrom, it may be stated that there is no real conflict about the fact that prior to February, 1956, Florida Sportservice, Inc. claimed concession rights under two different contracts. The first was an agreement between the former owners of Miami Stadium and Florida Sportservice, Inc. The second was an agreement between their assignors and the owners of the Syracuse, N. Y., baseball franchise, which franchise was purchased by the Miami Baseball Company.
In the latter part of February, 1956, Benjamin D. Reisman, an attorney who was general counsel for the interests owning Florida Sportservice, Inc., visited the law offices of John G. Thompson, the Miami Baseball Company’s secretary and its attorney. He was accompanied by Mr. Salomon, who was the president of the Miami Baseball Company. They told Mr. Thompson that they had worked out an agreement. This agreement was to supersede the two prior contracts under which Florida Sportservice was claiming and operating at that time. Mr. Reisman left a draft of an agreement to be used by Mr. Thompson in preparing an agreement for execution. Because the Miami Baseball Company had not settled with the City of Miami the terms of its lease on Miami Stadium and for other unexplained reasons the agreement was not completed and signed until approximately the same time that Mr. Storer announced his intention to buy the stock of the ball club. The agreement was dated back to February 28, 1956, although it was executed December 6, 1956. Mr. Thompson testified that notwithstanding the delay in preparing and executing the agreement “we all considered we had an agreement,” and that during the 1956 baseball season his company operated under it.
In decreeing the validity of the 20-year concession contract between the corporation and Florida Sportservice, Inc., executed for the corporation by its president and secretary on December 6, 1956, and dated back to February 28, 1956, the chancellor made no findings on the is *908 sues raised by the petition for declaratory decree. Those issues were based on allegations that Storer was not informed of the new concession agreement, and that it was made without the required corporate authority. Inasmuch as there was clearly sufficient evidence before the chancellor to sustain a basic finding upon the issue of corporate authority, we will discuss only that aspect of the case.
The by-laws provided that the power of the president to make contracts was sub- ' ject to approval of the board of directors. However, a large directorate was provided ’for. Twenty-one directors were elected, many of whom were men of local and na-tional prominence whose presence on the ' board presumably was of more value to the corporation in its public relations than in • the Conduct of its business. In apparent contemplation of so unwieldly a directorate, the by-laws had provided for appointment of an executive committee' to conduct the business of the corporation. Such a com-ifnittee wasr duly formed, consisting of Sal-'bmon, Stein and Cooper. While there were no minutes or records of the meetings or action o-f the executive committee regarding this contract, the evidence disclosed that the members of the executive com'mittee conferred with regard to the contract, and that it was made with the committee’s knowledge and authorization.[3] Therefore, the chancellor was correct in 1 concluding that the concession contract • in question was authorized by the executive committee and that the executive committee was duly empowered to so act. The fact that the authorization of the executive •committee was oral and not reduced to writing did not destroy its effectiveness. See St. Andrew’s Bay Land Co. v. Mitchell, 4 Fla. 192, 54 Am.Dec. 340; Thomkin Corp. v. Miller, 156 Fla. 388, 24 So.2d 48; Etheredge v. Barrow, Fla.App.1958, 102 So.2d 660, 663; 13 Am.Jur., Corporations, § 865; 19 C.J.S. Corporations § 1008; 7 Fla.Jur., Corporations, § 268.
Affirmed.
HORTON, C. J., and PEARSON and CARROLL, CHAS., JJ., concur.

. A previous appearance of this case is reported at 115 So.2d 433.

. This same agreement was treated by this court in Florida Sportservice, Inc. v. City of Miami, Fla.App.1960, 118 So.2d 232.

. It should be noted the minutes show that when the transaction by • which iStor-er acquired the stock of the corporation was consummated on December SI, 1956, which' included a loan from iStorer to the corporation to discharge its outstanding indentures in the amount of $135,096.85, that loan was considered and approved and the authority to execute the notes was granted by the executive committee rather than by the board of directors. .