226 So.2d 887 (1969)
YARNALL WAREHOUSE & TRANSFER, INC., a Florida Corporation, Appellant,
v.
The THREE IVORY BROTHERS MOVING COMPANY, a Michigan Corporation, Ivory Bros. Transfer and Storage Company, a Florida Corporation, and Allied Van Lines, Inc., a Delaware Corporation, Appellees.
No. 68-477.
District Court of Appeal of Florida. Second District.
October 3, 1969.
Ezra J. Regen, Sarasota, for appellant.
Joe T. Martin, Lake Wales, for appellees.
*888 PIERCE, Judge.
Yarnall Warehouse & Transfer, Inc., a Florida corporation, (hereinafter Yarnall) appeals a final judgment entered by the Polk County Circuit Court against Yarnall, plaintiff therein, and in favor of The Three Ivory Brothers Moving Company, a Michigan corporation, (hereinafter Michigan Ivory), Ivory Bros. Transfer and Storage Company, a Florida corporation, (hereinafter Florida Ivory), and Allied Van Lines, Inc., a Delaware corporation, (hereinafter Allied), defendants therein.
Yarnall filed its amended complaint seeking, among other things, a decree declaring the approval by Allied's directors of the application of Michigan Ivory for a branch office at Bartow to be contrary to the bylaws and regulations of Allied and therefore ultra vires and unlawful; directing Allied to rescind its approval of that application and to revoke the branch agency; restraining Allied from establishing any other branch agency in Polk County unless it has complied strictly with the bylaws and regulations pertinent thereto; and awarding Yarnall money damages for loss of profits and injunctive relief for unfair competition.
Michigan Ivory, Florida Ivory, and Allied filed their joint answer and defenses and after trial the Court entered final judgment in favor of the defendants and against the plaintiff, reserving jurisdiction to tax defendants' proper costs against the plaintiff.
Yarnall is a Florida corporation with its principal office in Lakeland and branch offices in Winter Haven, Lake Wales and Sarasota. For many years it has been engaged in the storage and intrastate and interstate transfer of household goods and is a stockholder in and authorized agent for Allied, from which it derives its interstate authority. Yarnall has no established exclusive agency agreement with Allied.
Michigan Ivory is a Michigan corporation with its principal office in Detroit. It is engaged in the storage and interstate movement of household goods. It is also a stockholder in and authorized agent for Allied, from which it derives its previously surrendered interstate authority in Florida.
Florida Ivory is a Florida corporation with its principal office at the Bartow Air Base near Bartow. It is largely or wholly owned by principal stockholders and officers, and is a branch agency, of Michigan Ivory. As such branch agency it has only interstate authority, its application for intrastate authority having been denied by the Florida Public Utilities Commission. The granting of authority to establish this branch agency by Allied gave rise to this litigation.
Allied, a Delaware corporation, is a nonprofit association of independent and frequently competing transfer and storage companies. It is a nationwide booking agency or clearing house for interstate shipment and handling of household goods. Each authorized agent is the holder of one share of stock in Allied. Allied is financially maintained by a percentage of certain revenues paid into it by its stockholder-agents.
John Ivory is the president and director of Michigan Ivory and he and his brother are the principal stockholders of that corporation as well as Florida Ivory. He was elected to Allied's 18-man board of directors on February 1, 1963, at which meeting the board approved Michigan Ivory's application, made in 1962 before John Ivory became a director of Allied, to establish a branch office at Bartow Air Base. As soon as Yarnall learned of this action it protested to the executive officers of Allied, and its president and secretary personally appeared before Allied's board on May 1, 1963. The application was referred back to the agency committee for re-examination. On May 3, 1963, the agency committee recommended to the board that the branch agency application be approved and the board affirmed the *889 granting of the branch agency. The minutes reflect that John Ivory was present at the May 1 and May 3 meetings of the board and testimony indicates that he spoke in favor of affirming the application. After further protests by Yarnall, this suit was filed.
Allied and Michigan Ivory assert and Yarnall concedes that the Allied agency agreements, including that held by Yarnall, are not territorially exclusive. Certain of the exhibits show that in many communities there are neighboring competing Allied agents.
The lower Court found inter alia: that the granting of Michigan Ivory's application for a branch agency at Bartow was a proper function of Allied's board of directors which did not violate Rule 26 and Article I, Section 3(c) of Allied's corporate bylaws; that there was no sufficient evidence that John Ivory exerted, or that the board was subjected to, duress or coercion by virtue of John Ivory's position; that "neither poor business judgment of the Board of Directors * * * objectively demonstrated nor business disadvantages to * * * Yarnall subjectively demonstrated constitutes bad faith, discrimination or breach of any fiduciary duty"; and that the granting of the branch agency under the facts and circumstances then prevailing was not "an ultra vires act committed in bad faith or in breach of the fiduciary duty imposed on the board of directors", nor was it an abuse of discretion or departure from the "business judgment rule" such as would permit the Court to set aside the board's action. The Court further found that while the agency committee was required to study agency, branch agency and agency transfer applications resulting in some applications recommended by the committee being approved while others were denied by the board, the evidence did not support the conclusion that Allied's board abused its discretion in this instance by improperly delegating a duty which involved the exercise of judgment and discretion to the chairman of the agency committee; that the granting of the agency by Allied did not constitute an attempt to prevent competition in transportation of commodities in violation of Article X, Section 2, of Allied's bylaws; and that the Court would not substitute its judgment for that of corporate management absent a clear showing of bad faith, discrimination or abuse of business judgment.
In determining whether Yarnall was entitled to any relief it sought, the Court held that its damage, if any, was conjectural and the amount thereof would be purely speculative and that Yarnall was not entitled to a declaration of the Court that the creation of the branch agency was null and void or a decree requiring the revocation of that authority. The Court concluded that Yarnall did not sustain its burden of proof by the greater weight of the evidence.
Yarnall contends that the Court placed an undue burden upon it with respect to proof of bad faith and abuse of discretion. It asserts that after it introduced evidence of bad faith and abuse of discretion, the burden should have shifted to the defendants, particularly Allied, to overcome this prima facie showing. Yarnall argues that the evidence shows that Allied's directors were not acting in good faith nor in a fair and reasonable manner in granting Michigan Ivory's application for a branch agency in a territory which Yarnall had occupied without competition for a number of years.
Rule 26 of Allied's Rules and Regulations permits such competitive situation, but requires:
"An agent may operate a branch of his agency only if the branch is approved by the board of directors. A branch shall be approved if the board of directors find (A) that the branch has, or will have, facilities for booking and terminal service as defined in Section 2 of Article XI hereof and (B) that the branch would be in the interest of public *890 service and efficiency and the operation of the company in the conduct of its business * * *".
Article I, Section 3 of Allied's bylaws provides in part:
(a) At all times the company will provide for the general public the highest type of service possible.
(b) Consistently with the rendition of such service, the operations of the company will be conducted with efficiency and economy.
(c) Since both service to the public and efficiency of operation under the type of operation conducted by the company at all times will depend upon the loyal cooperation of responsible and efficient agents, the company, upon its part, as far as consistent with the two foregoing declarations, will seek to foster the interests of the agents in every lawful way, and in a fair and reasonable manner.
In support of its position, Yarnall says that the knowledge that it was adequately covering the market in Polk County the year prior to the granting of the agency was available to Allied's directors when they were considering Michigan Ivory's application. Allied's field investigator estimated that Yarnall was doing about 50% of the available interstate business emanating from Polk County, whereas, on a nationwide basis in 1962 Allied was capturing only 22-26% of the available market. Allied's general manager wrote on Michigan Ivory's application that "at present time A.V.L. [referring to Yarnall] and competition are covering rather thoroughly; however if expansion of area comes about, A.V.L. will need additional representation," (but nevertheless recommended approval of the branch agency "on the strength of the agent's reputation"). Yarnall urges that if some of these facts were unknown to Allied's directors, it was their fiduciary obligation under Article I, Section 3(c) of the bylaws to have made some effort to ascertain the truth of these facts.
On the other hand, Allied's witnesses testified that they did not believe that the field investigator's estimate that Yarnall was doing 50% of the interstate business emanating from Polk County in 1962 was correct. Allied's field investigator testified that there is no way of knowing what the competition did. This 50% figure was "just something I pulled out of the air; * * * it was just a guess; that was not a true statement."
Allied knew that Yarnall had never been aggressive in sales, while Michigan Ivory was one of the more aggressive agents in Allied. On the basis of Michigan Ivory's production in other places, Allied felt that it had the ability and know-how to develop business. Michigan Ivory had a diversified business, such as storing and moving displays and exhibits, records for corporations, automobiles, boats, electronics, etc., which the agents in the Polk County area had not taken the challenge of developing. It also prepared household goods and other commodities for domestic as well as overseas shipments.
Michigan Ivory's application for the branch agency in Polk County was investigated by the agency committee, the customer or claim department, the operations department, the accounting department, Allied's attorney, and the general manager. It was also assigned to one of the directors who made a personal inspection of the various Ivory facilities. A personal inspection was also made by the field investigator. Then it was placed on the agenda of the agency committee which acted on it and made its recommendation to the board.
The corporation and its directors and officers are bound by and must comply with the charter and bylaws. Fletcher, Cyc. Corp. (Perm.Ed., Revised 1965), Vol. 8, § 4197. The management of corporate business is vested in the directors of the corporation, and Courts in Florida have given to directors wide discretion in the exercise of business judgment in the performance *891 of their duties. A Court of equity will not attempt to pass upon questions of mere business expediency or the mere exercise of business judgment, which is vested by law in the governing body of the corporation. Citizens National Bank v. Peters, Fla.App. 1965, 175 So.2d 54; Orlando Orange Grove Co. v. Hale, 1935, 119 Fla. 159, 161 So. 284; 7 Fla.Jur., Corporations §§ 158, 281; 18 C.J.S. Corporations § 520.
The general rule is that the board of directors has the power to appoint and authorize a committee of their number to act for the corporation in a particular matter, 19 Am.Jur. Corporations § 1160; Storer v. Florida Sportservice, Inc., Fla. App. 1961, 125 So.2d 906, although its authority to delegate powers involving the exercise of discretion and judgment is not unlimited, 19 C.J.S. Corporations § 758.
The evidence shows that Michigan Ivory's application was in due form with supporting documents. It was processed by Allied's various committees. The agency committee, which the board had power to appoint, considered the application and made its report and recommendation to the board of directors. Some applications recommended by the agency committee were approved by the board while others were denied. Allied's board did not abuse its discretion by improperly delegating a duty which involved the exercise of judgment and discretion to its chairman of the agency committee. The granting or withholding of authority to establish the branch agency was a proper function of the board which required the exercise of business judgment.
Yarnall asserts in its brief that "because of the singular relationship that existed between the stockholders and the company and the privileged position enjoyed by [Michigan] Ivory's president at the time its branch application was pending, the issue demanded the highest exercise of good faith and fair judgment on the part of Allied's directors, so as not to favor one stockholder-agent over another, in violation of the bylaws."
Self-dealing is discussed in Corr v. Leisey, Fla.App. 1962, 138 So.2d 795, where this Court quoted from 1 Hornstein, Corporation Law and Practice § 439, pp. 541-545. In that treatise on Pages 542-544, it is stated:
"In a majority of the states, however, a transaction involving an interested director is now voidable only if unfair (i.e., a hard bargain) or if the directors acted in bad faith.
Where a transaction has been authorized by an independent majority (i.e., the `interested' director was not necessary either to the quorum or to the authorizing vote), almost all courts will now uphold the transaction if fair. Fairness is a prerequisite because of the danger of `logrolling.' * * *
Absent a specific statute-prescribed procedure, a few precautions can minimize the danger of voidability in transactions where an `interested' director is involved. Full disclosure should be made to fellow-directors. If possible, the interested director should not be counted in the quorum and should not vote on the transaction * * *."
This is not a case where the director held a one-sided contract which left the corporation at his mercy. Globe Woolen Co. v. Utica Gas & Electric Co., 1918, 224 N.Y. 483, 121 N.E. 378. Michigan Ivory is not a majority or dominant stockholder in Allied, as each of the 1,000 or more Allied agents owns one share of stock. The agency contract complained of is not adverse to the interest of the corporation. As pointed out above, all the stockholders as well as the directors have agency contracts with Allied from which the corporation benefits.
Yarnall cites derivative actions and quotes from 7 Fla.Jur. Corporations § 159, p. 478, for the proposition that "the absence of actual fraud in wasting corporate *892 assets is no defense to an action by minority stockholders." But this rule is applicable to actions against "directors and officers of the corporation if such officers and directors, by their gross mis-judgment or ignorance have permitted or are continuing to permit an illegal misapplication or waste of corporate funds to the detriment of the corporation and its stockholders."
In the case sub judice, Michigan Ivory's application for a branch agency was made before John Ivory became a member of Allied's board of directors on February 1, 1963. It was approved by 17 disinterested members of the board  the record does not disclose whether or not Ivory participated in consideration of the application. Thereafter Yarnall protested the granting of the branch agency and was afforded the opportunity of appearing before the board on May 1, 1963 and presenting a lengthy memorandum in opposition to the granting of the branch agency to Michigan Ivory. The application was referred to the agency committee for re-examination and on May 3, 1963, the agency committee recommended to the board that the branch agency application be approved and the board affirmed the granting of the branch agency. The minutes reflect that John Ivory was present at the meetings on May 1 and May 3 and testimony indicates that he spoke in favor of affirming the application, but he was only one of an 18-man board. He was not necessary either to the quorum or to the authorizing vote. There is no evidence that he exerted, or that Allied's board was subjected to, duress or coercion by virtue of Ivory's position. The board was authorized by its bylaws to grant the branch agency and this was done by a disinterested majority.
Yarnall urges that, since Allied's bylaws, rules or regulations do not specifically define the term "in the interest of publice service and efficiency," Court decisions reviewing the Interstate Commerce Commission and Florida Public Service rulings dealing with the term "public convenience and necessity" would be relevant. This assumption is not correct. Allied's Rule 26 is not the same as the State Transportation Act. Rule 26 provides, in part:
"A branch shall be approved if the board of directors find * * * (B) that the branch would be in the interest of public service and efficiency and the operation of the company in the conduct of its business * * *".
Under Article I, Sec. 3(a) of Allied's bylaws it is provided that "at all times the company will provide for the general public the highest type of service possible." Therefore, in considering applications for branch agencies, Allied's board was not limited to finding whether the branch would be primarily for the benefit of the general public, but could consider whether it would be beneficial to the company in the conduct of its business. Neither did it have to consider whether the branch would serve a present need only, but could take into consideration the potential needs for additional representation if expansion of the area comes about.
We hold that under the circumstances in this case the lower Court was correct in not substituting its judgment for that of corporate management absent a clear showing of bad faith, discrimination or abuse of business judgment.
Without further delineating the testimony of the numerous witnesses or the voluminous evidence as a whole, we find that there was sufficient evidence to support the findings of the Chancellor, and the final judgment entered is therefore 
Affirmed.
HOBSON, C.J., and MANN, J., concur.