HENDRY, Judge.
Appellant-plaintiffs, shareholders and directors of the parent corporation, instituted a stockholders’ derivative action to enforce the rights of the parent corporation concerning the sale of certain assets of its wholly owned subsidiary. They seek review of a final summary judgment entered in favor of appellee-defendants, who are the directors of the parent and the former president of the subsidiary.
We affirm. Appellants lack the capacity to sue in behalf of the subsidiary, which would be the party entitled to bring action for certain of the rights allegedly violated, because of the requirement of § 608.131, Fla.Stat., F.S.A. Furthermore, the affidavits, depositions, interrogatories and exhibits conclusively demonstrate the absence of any genuine issue of material fact, so that appellees are properly entitled to judgment as a matter of law.
On their own behalf and on behalf of all other stockholders of Context Industries, Inc., formerly known as Life of Florida Corporation (“parent”), the appellants filed a complaint against defendant-appel-lees: the parent corporation, Alec S. Wallace (inter alia, former president of the wholly owned subsidiary), Thomas L. Tatham, (director), and Emil C. Cherven-ak (director). The prayer requested an accounting, an injunction, and damages. Appellants characterize the suit as a “single” stockholders’ derivative action, rather than as a “double” derivative suit. See: 19 Am.Jur.2d Corporations § 569, pp. 97-98 (1965). Both Lon Worth Crow, Jr. and Charles I. Babcock, Sr. are director-shareholders of the parent. The remaining appellants are seemingly only shareholders of the parent.
The complaint charges the directors of the parent with corporate waste, and seeks recovery for that part of the $300,000.00 payable to Wallace, president of the subsidiary, under his written employment contract with Security Life Insurance Company of Georgia. Plaintiffs characterize that amount to be part of the purchase price of the industrial life insurance business of the subsidiary which the parent sold Security Life Insurance Company of Georgia in March, 1967. On the date of this sale of certain of the subsidiary’s assets, Wallace personally agreed to work for Security Life for ten years at $30,000.00 per year. Under these facts, Wallace allegedly breached his prior written exclusive employment contract with the subsidiary, notwithstanding a clause in the 1967 contract stating that his duties for Security Life did not interfere with his duties to the subsidiary.
*867 On February 10, 1946, Life Insurance Company of Florida was organized in this state. In October, 1968 Life of Florida Corporation was incorporated. On December 20, 1968, Life of Florida Corporation became the “parent” by issuing shares of its common stock in exchange for all the outstanding stock of Life Insurance Company of Florida. The shares of the parent were exchanged with the individual shareholders of the subsidiary.
In March, 1969, Wallace negotiated the sale of almost all of the subsidiary’s assets, and on March 26, 1969, the subsidiary signed a written contract with Security Life Insurance Company of Georgia for the sale of the subsidiary’s commercial life insurance business, which constituted the great bulk of the subsidiary’s assets.
Until January, 1970, the subsidiary remained a wholly owned subsidiary of the parent. However, in January, 1970, the subsidiary agreed to sell all its own remaining assets, including all its capital stock and articles of incorporation to Swift & Company. The sale was approved and consummated in June, 1970.
In May or June, 1970, the parent changed its name to Context Industries, Inc.
Appellant-plaintiffs contend that the record reveals at least three genuine issues of material fact. First, whether on March 26, 1969, Security Life Insurance Company of Georgia agreed to pay Wallace $300,000.00 under a “special services” employment contract, as part of the purchase price of the industrial life insurance business purchased by Security Life from the subsidiary. Second, whether Wallace before signing the special services contract falsely stated to Security Life that the boards of the parent and subsidiary had approved the special services contract. Third, whether Wallace failed to account for sums received under the special services contract to the parent corporation.
We turn now to the merits, and observe that since the genuine issues of material fact which appellant asserts that the record presents are interrelated, we may therefore consider them together. Under the allegations of the complaint, the directors of the parent were charged with corporate waste for failing to institute action to recover part of the consideration for the sale of a corporate asset. In the usual case, the shareholders of the subsidiary would be the proper parties to assert that the consideration received was the result of a fraudulent deal or was so inadequate as to be waste, where the sale of the subsidiary’s assets are involved. Heddendorf for Benefit of East Boston Co. v. Goldfine, 167 F.Supp. 915, 917 and 921-922 (D.C.Mass., 1958).
In this case, the parent corporation is the sole shareholder of the subsidiary. It might therefore appear that plaintiffs may have the capacity to institute a “double” derivative suit. However, in this case plaintiffs lack the statutory capacity to sue under § 608.131(1), Fla.Stat., F.S.A., which provides:
“608.131 Stockholders’ derivative actions; security for expenses. — In any action commenced or maintained by a stockholder of any domestic or foreign corporation to procure a judgment in its favor:
“(1) It must be made to appear that the plaintiff is a stockholder of such corporation at the time of bringing the action and that he was a stockholder of such corporation at the time of the transaction of which he complains, or that his interest devolved upon him by operation of law. [Emphasis added.]
* * * * * * ”
The uncontroverted facts are that in the combined meeting of the boards of directors of the parent and the subsidiary, held on March 26, 1969, the companies approved the sale of the subsidiary’s assets to Security Life Insurance Company of Georgia. At that meeting one of the plaintiffs suggested, and Wallace agreed, that Wallace *868 should re-negotiate his prior employment contract with the subsidiary. Wallace in June, 1969, voluntarily reduced his salary received from the subsidiary. At various times, including January and April, 1970, Wallace called attention to the March 26, 1969 agreement that he should re-negotiate his salary. In January, 1970, the subsidiary agreed to sell its remaining assets to Swift & Company, and the parent company assumed the subsidiary’s obligation to Wallace. The sale to Swift & Company was made in June, 1970.
Thus, on the one hand, the disinterested board of directors of the parent may be deemed to have adopted, approved, or ratified the action of the president, Yarnall Warehouse & Transfer, Inc. v. Three Ivory Brothers Moving Company, Fla.App.1969, 226 So.2d 887, 891, or, in the exercise of their business judgment determined that no action should be pursued, id. at 890-891. Furthermore, in this case, appellants did not produce sufficient proof to raise any genuine issue of material fact as to the directors’ fraud or breach of fiduciary duties. On the other hand, if the right to bring action against the president or Context Industries remained as a corporate asset of the subsidiary, then at the time the suit was instituted, in June, 1970, plaintiffs did not show that they owned shares in the subsidiary or Swift & Company which had by that time purchased all its remaining assets. See: Hirshhorn v. Mine Safety Appliances, Co., 54 F.Supp. 588, 592 (W.D.Pa., 1944). The concluding statements in Nelson v. Miller, Fla.App. 1968, 212 So.2d 66, are of some aid in the disposition of this case:
“The fate of the stockholder’s cause of action in a derivative suit is inexorably bound to the scope of rights enforceable by the corporation. The cause of action resides in the corporate entity, not in the individual shareholder plaintiff. The corporation is the real party in interest. [Citations omitted.] Having determined that the dissolved corporate body in question may not maintain the instant suit, it follows as a logical consequence that the ability to do so will likewise be denied to the stockholders who are plaintiffs here. Accordingly, the order dismissing the complaint with prejudice is hereby affirmed.”
For the reasons stated and based upon the authorities cited, the judgment appealed is affirmed.
Affirmed.