491 F.2d 17
 Jacob SCHEIN and Marvin H. Schein, Plaintiffs-Appellants,
v.
CAESAR'S WORLD, INC., et al., Defendants-Appellees.
No. 73-3702 Summary Calendar.*
*Rule 18, 5 Cir.; see Isbell Enterprises, Inc.
v.
Citizens Casualty Company of New York et al., 5 Cir., 1970,
431 F.2d 409, PartI.
 United States Court of Appeals, Fifth Circuit.
 March 15, 1974.
 
 Bruce M. Lyons, Bruno L. DiGiulian, Fort Lauderdale, Fla., Mitchell A. Kramer, Philadelphia, Pa., for plaintiffs-appellants.
 Robert E. Venney, Miami, Fla., for Caesar's.
 Guy C. Quinlan, New York City, Bernard S. Mandler, Miami Beach, Fla., for Perlman, and others.
 William R. Glendon, Rogers & Wells, New York City, for defendants-appellees.
 Before COLEMAN, DYER and RONEY, Circuit Judges.
 PER CURIAM:
 
 
 1
 Upon full consideration of the records and briefs in this case, the judgment of the District Court is affirmed on the memorandum opinion of Judge Peter T. Fay, dated September 12, 1973, hereto attached.
 
 
 2
 Affirmed.
 
 APPENDIX
 Opinion of District Court
 
 3
 FAY, District Judge.
 
 
 4
 Presented for judicial disposition at the instant stage of this derivative action litigation is the Motion for Summary Judgment of the individual defendants, who are officers and directors of defendant Caesar's World, Inc., on whose behalf this cause was instituted. Antedating the Court's decision on defendants' motion has been an extensive review and analysis of plaintiff shareholders' grievances, as defined in their amended complaint and in oral argument before the Court, all discovery material and legal memoranda submitted by the parties to this cause, and, finally, a thorough study of the case law pertinent to the liability of corporate officers and directors for failure to use the care required of them by virtue of their corporate position. Mandated by such review and analysis is the granting of defendants' Motion for Summary Judgment.
 
 
 5
 Initially, it is to be noted that the management of corporate business is vested in the directors of a corporation, the directors having wide discretion in the exercise of business judgment in the performance of their duties. F.S.A., 608.09. While directors are required to discharge their duties with the diligent care and skill which ordinarily prudent men would exercise under similar circumstances in like positions, they incur no liability to the corporation for issues of business expediency which they resolve through the mere exercise of their business judgment. See e.g. Yarnall Warehouse and Transfer, Inc. v. Three Ivory Bros. Moving, Fla.App., 226 So.2d 887 (1969); Citizens Nat. Bank of St. Petersburg v. Peters, Fla.App., 175 So.2d 54 (1965). Thus, it is to an application to plaintiffs' cause of these controlling principles that this order now turns.
 
 
 6
 Plaintiffs, through their amended complaint, attribute 'diminution and/or wasting of Corporation assets' to the individual defendants as a result of defendants' alleged 'negligence, inattention, carelessness, lack of diligence, lack of care, lack of skill of an ordinary prudent man, lack of ordinary care, failure to properly discharge fiduciary or quasi-fiduciary duties, and mismanagement . . ..' (Amended Complaint, para. 16) The genesis of such purported corporate waste and this lawsuit is a written 'Equipment Lease' executed March 2, 1971, by Centronics Data Computer Corporation and Desert Palace, Inc., a wholly-owned subsidiary of defendant Caesar's World, Inc.
 
 
 7
 Pursuant to the lease, Centronics undertook to install a computerized casino system in the Caesar's Palace Casino operated by Desert Palace. Under the lease, either party had the right to terminate the agreement prior to the end of a six month's rent-free period commencing when 'sufficient equipment and accessories' were 'installed . . . and operation . . ..'
 
 
 8
 Simultaneously with, and as an inducement to, the execution of the Equipment Lease, Centronics assigned to Ceasar's World an option to purchase 510,000 shares of Centronics stock. The right to recapture fifty percent of the stock, however, was retained by Centronics in the event of the termination of the equipment lease prior to the end of the six month period. While Centronics was endeavoring to install an operable casino system, the price of its stock began to rise. Consequently, Caesar's World exercised its option and purchased the 510,000 shares in September, 1971.
 
 
 9
 Relevant portions of the 'Equipment Lease' provide as follows:
 
 
 10
 5. TRIAL PERIOD AND AGREEMENT AS TO RENT: (a) Lessee shall use the equipment and accessories being leased to it under this agreement without charge for a period of six months beginning on the day there is installed at the locations set forth . . . and operating sufficient equipment and accessories to make the system . . . operate at least one twenty-one table and at lease one craps table . . .. (b) Unless Lessee notifies Lessor prior to the end of the six month trial period that Lessee does not want to continue to use the equipment and accessories being leased hereunder, prior to the end of the six month period, Lessee and Lessor will execute and affix to this equipment lease, an Exhibit 'C' setting forth a monthly rent for the equipment and accessories being leased hereunder. Neither Lessee nor Lessor will be required to execute such Exhibit 'C' except that if Lessee will execute an Exhibit 'C' calling for a rent of at least $10,000 per month, Lessor will be required to execute such Exhibit 'C' calling for a rent of not more than $5,000 per month, Lessee will be required to execute such Exhibit 'C'. (c) If prior to the end of the six month trial period either party notifies the other that it does not wish to continue operating the equipment and accessories . . . (i) promptly upon receipt of such notice Lessor will remove all such equipment and accessories, (ii) Lessor will reimburse Lessee for all costs . . . in excess of $3,500 reasonably incurred by Lessee in restoring the property and fixtures . . .; and (iii) except as provided in clauses (i) and (ii) neither Lessee nor Lessor shall have any further obligations under this Equipment Lease or otherwise relating to the system . . ..
 
 
 11
 It is undisputed that, because of unforeseen technical problems, the equipment and accessories comprising the subject casino system were never placed in operation. However, it is plaintiffs' simplistic position that because of the rise in value of Centronics' stock, defendants breached their corporate fiduciary duty by not acting-- under 5(b) of the lease-- to fix the rent under the Equipment Lease in an effort to extinguish Centronics' right to recapture its stock. Presumably, plaintiffs would have had the corporate directors obligate Caesar's World to pay $10,000 per month for the full period of the lease for equipment which was not functional at the time and may never have been made operable.
 
 
 12
 Defendant directors did, in fact, offer to execute such an agreement. However, such offer was refused by Centronics, and, rather than insisting upon what plaintiffs now assert the rights of Caesar's World to have been under the Equipment Lease, the defendant directors settled a dispute between Caesar's and Centronics-- which dispute arose in April, 1972, following the sharp increase in the price of Centronics stock-- as to each corporation's rights under the lease and assignment agreements. Under the compromise agreement, Centronics was permitted to purchase 100,000 shares out of the 250,000 it had claimed, waiving any claim to the remainder of the shares and agreeing-- which it had previously refused to do-- to register the stock, a prerequisite to Caesar's World's ability to sell the volatile stock.
 
 
 13
 It is patently obvious to this Court that in executing the compromise agreement, the directors of Caesar's World fulfilled their corporate duties with the diligent care and skill which ordinarily prudent men would exercise under similar circumstances in like positions. While not passing on the merit of the contention, a persuasive argument could be made that Caesar's right to require execution of 'Exhibit C', thus foreclosing Centronics from recapturing one-half of its stock, did not ripen until the commencement of the six month trial period. Under the terms of the Equipment Lease, the trial period was commenced:
 
 
 14
 . . . beginning on the day there is installed at the locations set forth . . . and operating sufficient equipment and accessories to make the system . . . operable . . ..
 
 
 15
 Since it is undisputed that the subject equipment and accessories were never in operation, Centronics could have legitimately contended that its light to recapture the stock was absolute in view of the lease's provision that either party could terminate its contractual obligations upon notice to the other party at any time 'prior to the end of the six month trial period . . ..' Further, even the execution of 'Exhibit C' by Centronics under the circumstances heretofore delineated could have subjected that instrument to attack on the basis of fraud or overreaching by Caesar's World.
 
 
 16
 Thus, faced with the prospect of protracted litigation-- in which Caesar's World might not prevail-- over the contractual rights of the parties to unregistered volatile stock whose value might plummet as spectacularly as it has risen, the defendant directors executed a compromise agreement with Centronics. (While it is not dispositive of the issue at bar, it is noteworthy that an immediate profit of $6,767,000, on a $1,700,000 investment, accrued to Caesar's World as a result of the compromise.)
 
 
 17
 Vested with the management of the business of Caesar's World, it was incumbent upon the corporate directors to evaluate the relative risks of alternative courses of action. Accordingly, the decision of the defendant directors was indisputably a sound exercise of their business judgment which, absent any allegations or showing of bad faith or fraud, is not judicially reviewable. These principles were recently enunciated as follows:
 
 
 18
 . . . The management of corporate business is vested in the directors of the corporation, and Courts in Florida have given to directors wide discretion in the exercise of business judgment in the performance of their duties. A Court of equity will not attempt to pass upon questions of mere business expediency or the mere exercise of business judgment, which is vested by law in the governing body of the corporation. Yarnall Ware & Tr., Inc. v. Three Ivory Bros. Mov. Co., supra, 226 So.2d at 890-891; Citizens National Bank v. Peters, Fla.App.1965, 175 So.2d 54; Orlando Orange Groves Co. v. Hale, 119 Fla. 159, 161 So. 284; 18 C.J.S. Corporations 520; 7 Fla.Jur., Corporations 158, 281.
 
 
 19
 Thus, plaintiffs have been accorded the opportunity to present their cause and offer testimony and evidence as to their claims. A thorough review of all presentations of the parties, in addition to all depositions and pleadings filed, conclusively establishes the lack of any factual issues to be tried in this litigation. Accordingly, summary judgment is hereby granted in favor of the defendants, Caesar's World, Inc., Clifford S. Perlman, Stuart Z. Perlman, William H. McElnea, Jr., Jay E. Leshaw, Harold E. Campbell, Jr., Bertin J. Perez, Richard A. Sheehan, Jr., L. John Polite, Jr. and Melvin Chasen, and against the plaintiffs, Jacob Schein and Marvin H. Schein, defendants being so entitled as a matter of law.