NESBITT, Judge.
Calder Race Course, Inc. (Calder) appeals from an order granting Frank A. Gaitan, a trainer, a temporary mandatory injunction requiring it to provide Gaitan with horse stalls.
Since it is conceded that Gaitan has no contractual right to the use of the horse stalls, the focus of our inquiry is to ascertain whether the State of Florida has so regulated this commercial activity, (promoting horse racing), so as to render it a public corporation thereby subjecting its actions to judicial review. Finding that it has not, we reverse the order appealed from *16 with directions to dissolve the injunction and dismiss the complaint.[1]
Gaitan, like all other trainers, was required to apply not later than July 14, 1980 in order to obtain horse stalls for the second session of Calder which operated between August 20, 1980 and November 8, 1980. Calder received 2,300 applications for horse stalls but was physically unable to supply more than 1,550 stalls. Although Gaitan was admittedly late in filing his application, it has been conceded that, even had he timely applied to the racing secretary for horse stalls, that request would have been denied.
It is also conceded by Calder that pari mutuel racing has been considerably regulated by the enactment of various portions of Chapter 550, Florida Statutes (1979). However, despite the existence of such regulations, it was held in Fulton v. Hecht, 545 F.2d 540 (5th Cir.), cert. denied, 430 U.S. 984, 97 S.Ct. 1682, 52 L.Ed.2d 379 (1977), that its regulation was not so excessive so as to make the state a “partner” in greyhound racing for the purposes of the Fourteenth Amendment. See also, Jackson v. Metropolitan Edison Company, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974).
Admittedly, the State Board of Regulation promulgated Rule 7E-1.10(5), which provides that the racing secretary shall allocate horse stalls to trainers. This is the only area that can be pinpointed as a nexus between the regulation of commercial race tracks and the State of Florida so as to subject race tracks to regulation as public corporations; this nexus is insufficient. The common law rule is that courts will not make rulings which require private corporations to take affirmative action in areas traditionally reserved exclusively to internal managerial decisions in the operation of their business. West Coast Hospital Ass’n v. Hoare, 64 So.2d 293 (Fla.1953); Yarnall Warehouse & Transfer, Inc. v. Three Ivory Brothers Moving Company, 226 So.2d 887 (Fla.2d DCA 1969). See also, Galler v. Galler, 95 Ill.App.2d 340, 238 N.E.2d 274 (1968). In the context of the actual allocation of horse stalls to trainers, Rule 7E -1.10(5) is merely directory rather than mandatory.
The State of Florida, in the public interest, has undertaken to regulate and control pari mutuel wagering in racing establishments. This action, standing alone, does not make those commercial enterprises amenable to regulation by the court. Tropical Park, Inc. v. Jock, 374 So.2d 639 (Fla.3d DCA 1979), cert. denied, 383 So.2d 1196 (Fla.1980). Until the Florida Legislature acts or private racing establishments disparage constitutionally guaranteed rights, they continue to have the right to choose those persons with whom they wish to do business.
For the foregoing reasons, the temporary mandatory injunction is reversed with directions that it be dissolved and the complaint be dismissed.

. We ordered this appeal expedited and heard oral argument on November 4, 1980. On the same date, we issued an order reversing the trial court’s imposition of an injunction. This opinion is to explain the reason for our ruling.